Flonnie C. WALTON, Widow, and Georgiabelle Walton Davis and John B. Davis, Her Husband, and Danny Irvin, Appellants,

v.

Tarter LEE and Willena Lee, His Wife, Appellees.

No. 81–SC–715–DG.

Supreme Court of Kentucky.

May 25, 1982.

Rehearing Denied July 6, 1982.

James F. Clay, Clay & Clay, Danville, for appellants.

James G. Sheehan, Jr., Danville, for appellees.

O'HARA, Justice.

The salient facts of this case are Tarter Lee and Willena Lee, his wife, appealed from a judgment of the Lincoln Circuit Court enforcing their contract to purchase certain real estate from Flonnie C. Walton and Georgiabelle Walton Davis and others. The Court of Appeals reversed, remanded, and ordered its opinion published. The vendees prosecute this motion for review.

In a probated will, E. V. Carson devised certain real estate of which 250 acres is the subject of this controversy as follows:

"I hereby bequeath all of my property, personal, real and mixed, to my wife, GEORGIE (sic) A. CARSON, for and during her life; and upon the death of my said wife, said property shall vest in my daughter, Flonie (sic) C. Walton, for and during her natural life; and at the death of my said daughter, said property shall vest absolutely in the children of my said daughter, Flonie (sic) C. Walton."

Georgia Carson died a number of years ago. Flonnie Walton, the daughter, is now 76 years of age and a widow. She has to date only one child, a daughter, Georgiabelle Walton Davis. The facts further reflect that a number of years ago Flonnie Walton underwent a hysterectomy resulting in the removal of her reproductive organs.

This action was instituted to enforce a purchase of the property by the vendees at a public auction (not a judicial sale), and the issue that brings it before us was and is that the deed as tendered by the vendors to the vendees was rejected on the basis that the same would not convey a good marketable fee simple title to the property.

The critical issue presented by this appeal is: whether under the facts and circumstances of this case, was the title as tendered marketable, or was there a sufficient cloud on it to render the title unmarketable? Our answer to this question must be that the title as tendered was unmarketable.

■ First, the course charted by the proposed vendor in this case was erroneous from its inception in that it was an attempt to sell the subject property at public auction as opposed to a judicial sale pursuant to the terms and provisions of KRS 389.040.[1]

■ At the outset, it is apparent that the language contained in the will provides for a contingent interest in the "children of my said daughter, Flonie (sic) C. Walton," which as hereinafter specified equates to a conclusive presumption that that interest, contingent as it may be, exists until it is fulfilled or Flonnie C. Walton dies. The common law as reiterated in the series of cases presenting this issue in Kentucky has historically held:

"Men and women are presumed capable of having children as long as they live, and this presumption in a case like this may not be rebutted by evidence." *Rand v. Smith*, 153 Ky. 516, 155 S.W. 1134 (1913).

Its last reiteration appears in the case of *Owings v. Owings*, 247 S.W.2d 221 (1952) wherein the language, though different, reaches the same succinct conclusion:

"Citations of a few of our opinions will show that we have strictly applied the rule of law, property and evidence to the effect that there is a legal presumption that as long as there is life there is possibility of issue."

In the intervening ten times that the question has been before the appellate reviewing court, rather short shrift has been given the consistent reaffirmation without rationalization. Therefore, the position of this

1. This statute was in effect on the date suit was instituted but has since been repealed and re-

vised at KRS 389A.030 (Effective July 15, 1980).

court remains firm and this conclusive presumption must persist in the law to give certitude to questions of title to land, trusts and related future interests. To hold otherwise would be to open up a Pandora's box of never ending litigation.

In our review of Kentucky cases and those of other states, we found the precept adopted with scant or little rationalization. Since this opinion will stand firmly in favor of the conclusive presumption, we submit this explicit and pertinent rationale as supportive:

> "This rule (conclusive presumption that all living persons are capable of having issue) has a purpose throughout the property law system, not merely in perpetuities cases. It is not based upon either understanding or lack of understanding of scientific facts but upon the economic need for certainty in property decisions." (Parenthetical information added) 45 Va. L.Review 500 "A Decade of Transition in Future Interests, by Bertel M. Sparks, (May, 1959).

This rationale becomes even more apparent having read the above cases which caused us to meander through a myriad of mixtures of ages, infirmities and illnesses, which only fortified the need for certitude.

The reaffirmation of the conclusive presumption by this court is dispositive of this case, therefore, it is unnecessary to prolong this opinion to settle the issue presented herein concerning an adoptive child. However, in this regard we find the law clearly stated at KRS 199.520(2) which states in relevant part:

> (2) Upon entry of the judgment of adoption, from and after the date of the filing of the petition, the child shall be deemed the child of petitioners and shall be considered for purposes of inheritance and succession and for all other legal consideration, the natural, legitimate child of the parents adopting it the same as if born of their bodies.

This opinion is submitted with the sincere hope that brevity begets clarity.

The decision of the Court of Appeals is reversed and the case is remanded to the Lincoln Circuit Court for a judgment consistent with this opinion.

PALMORE, C. J., STEPHENSON, STERNBERG and STEPHENS, JJ., concur.

AKER, J., concurs in a separate opinion.

CLAYTON, J., not sitting.

AKER, Justice, concurring.

I do not agree with the majority in continuing to cling to the timeless doctrine of conclusive presumption of fertility in the face of conclusive evidence to the contrary. However, I do agree with the result reached in this case because the possibility of adoption always exists.